MELLOY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the opinion of the Court except with respect to whether Nicklas’s mental state at the time of the alleged offense offsets the government’s important interest in prosecuting those that threaten FBI agents. In my view, the government cannot forcibly medicate a mentally ill defendant in order to restore him to competency for trial when the government knows that he was legally insane at the time of the alleged offense and knows, with some certainty, that holding a trial would not affect the ultimate disposition of the case. Accordingly, I respectfully dissent.
In Sell, the Supreme Court reaffirmed the proposition that “an individual has a ‘significant’ constitutionally protected ‘liberty interest’ in ‘avoiding the unwanted administration of antipsychotic drugs.’ ” 539 U.S. at 178, 123 S.Ct. 2174 (quoting Washington v. Harper, 494 U.S. 210, 221, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)). This is because “[t]he forcible injection of medication into a nonconsenting person’s body represents a substantial interference with that person’s liberty.” Harper, 494 U.S. at 229, 110 S.Ct. 1028. Indeed, “when the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense.” Id. at 237-38, 110 S.Ct. 1028 (Stevens, J., dissenting). To guard against any unwarranted intrusions, the Supreme Court articulated a demanding, four-part test for determining when the government may forcibly medicate an individual solely for the purpose of restoring that person to competency to stand trial. Sell, 539 U.S. at 180-81, 123 S.Ct. 2174. Before laying out this test, though, the Supreme Court cautioned that such instances should be “rare.” Id. at 180, 123 S.Ct. 2174.
I do not believe Nicklas’s case presents one of those “rare” circumstances. Under Sell, the government must first show that “important governmental interests are at stake” and that the “special circumstances” of a given case do not sufficiently offset those interests. 539 U.S. at 180, 123 S.Ct. 2174. Here, the government has an important interest in prosecuting those that have allegedly threatened the lives of law enforcement officers. However, in my view, Nicklas’s mental condition at the time of the alleged offense materially offsets the government’s interest because whether Nicklas stands trial or not, his case likely will end with a civil commitment hearing.
According to the government’s own expert, Dr. Robert Johnson, Nicklas was legally insane at the time he allegedly committed the crime, due to his paranoid schizophrenia. The government does not contest this fact and even concedes that it would “probably” seek an acquittal by reason of insanity at trial, not a conviction. As such, if Nicklas were forcibly medicated to the point he could stand trial, and if the government could meet its burden of proof at trial, Nicklas would almost certainly be found not guilty by reason of insanity. Pursuant to 18 U.S.C. § 4243(d), Nicklas would then face a civil-commitment hearing, in which he would have the burden of proving that “his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect” before being released. If, on the other hand, the charge against Nicklas *1182 were dismissed because of his insanity, then he would still face a civil-commitment hearing pursuant to 18 U.S.C. § 4246(d), in which he would be released unless a court found that he “is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.” Consequently, despite some variability between the burden of proof in the two statutes, Nicklas would essentially face the same result: a civil-commitment hearing in which his release would hinge on the outcome of a dangerousness assessment.
The majority holds to the contrary, finding that Nicklas may be convicted and incarcerated because Nicklas has previously indicated he might not assert an insanity defense. While conceding this is a possibility, I do not believe the mere prospect that a defendant might choose not to defend himself at trial is sufficient to sustain the government’s interest. As an initial matter, the record is generally devoid of convincing evidence indicating that Nicklas would refrain from asserting the insanity defense at trial if he were restored to competency. Additionally, the Supreme Court stated that “only an ‘essential’ or ‘overriding’ state interest” can justify forcibly medicating a defendant. Sell, 539 U.S. at 178-79, 123 S.Ct. 2174 (quoting Riggins v. Nevada, 504 U.S. 127, 134-35, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)). I do not see how obtaining an unintended, and perhaps improper, application of the law — the conviction of a defendant who was indisputably insane at the time of the offense — can be an “essential” state interest. Indeed, the government’s interest ultimately rests upon pursuing justice within the rubric of the law, and there is little justice to be found in convicting Nicklas for something he allegedly wrote while insane. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (“The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a ease, but that justice shall be done.”). As the Supreme Court explained in the context of an involuntary confession: “Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane.” Blackburn v. State of Alabama, 361 U.S. 199, 207, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Accordingly, I believe the government’s general interest in prosecuting those that purportedly send threatening communications must give way in this case to Nicklas’s liberty interest.
The majority also finds that the government has an important interest in prosecuting Nicklas in order to protect the public from his future crimes. However, under any resolution of this case, Nicklas will be not be released if a court finds him to be a danger to either himself or the community. Additionally, it is for the lower court, not our Court, to first assess Nicklas’s dangerousness. As a consequence, I do not believe the government possesses a sufficient public-safety interest in forcibly medicating Nicklas for trial.
For the forgoing reasons, I concur in part and dissent in part.